1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10 | GENERAL STAR INDEMNITY      No.  2:16-cv-00628-MCE-AC
     COMPANY,
11
                  Plaintiff,
12                                        **MEMORANDUM AND ORDER**
          v.
13
     THUNDERBUTTE ENTERPRISES,
14   LLC, dba SIERRA NEVADA HOUSE,

15                Defendant.

16

17        Plaintiff General Star Indemnity Company ("Plaintiff") has filed the present lawsuit

18   seeking a judicial determination that it acted appropriately in denying a fire claim

19   submitted by its insured, Defendant Thunderbutte Enterprises, LLC ("Defendant").

20   According to Plaintiff, it properly cancelled Defendant's policy prior to the subject fire on

21   grounds that Defendant had failed to adopt mandatory safety recommendations.  To the

22   extent that Plaintiff claims it mistakenly advanced Defendant's funds towards the fire

23   losses it sustained, Plaintiff also includes a claim for unjust enrichment as to those funds.

24        Currently before this Court is Defendant's Motion to Dismiss for failure to state a

25   viable claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth

26   below, Defendant's Motion is GRANTED.[1]

27
          _____
          [1] Because oral argument would not be of material assistance, the Court ordered this matter
28   submitted on the briefing.  E.D. Cal. R. 230(g).

1

## BACKGROUND[2]

2

3      Defendant owns and operates the Sierra Nevada House, a historic hotel and

4  restaurant located in Coloma, California.  According to Plaintiff's Complaint, Plaintiff is "a

5  surplus lines insurance carrier authorized to do business in the State of California

6  through licensed surplus lines brokers."  Pl.'s Compl., ECF No. 1, ¶ 7.  On or about

7  June 26, 2015, Plaintiff, through its underwriter, Bass, and retail insurance Broker,

8  Deatsch Insurance Agency, Inc., issued its Commercial Property Insurance Policy

9  ("Policy") to Defendant.  The Policy provided loss coverage on Defendant's building of

10 up to $1,000,000.00, and further afforded additional coverage for personal property and

11 business income losses.  See Policy, Ex. A to Pl.'s Compl., p. 23.  The Common Policy

12 Declarations page states that no inspection of the insured premises was required before

13 issuance of the Policy.  Id. at p. 6.  The Policy does provide, however, that Plaintiff had

14 the right to inspect the property and "recommend" changes.  Id. at p. 7.

15     Plaintiff's Policy included the following provisions addressing the cancellation of a

16 policy in effect for more than 60 days:

17        3.  All Policies In Effect For More than 60 Days

18        a.    If this policy has been in effect for more than 60
           days…we may cancel this policy only upon the occurrence,
19         after the effective date of the policy, of one or more of the
           following:
20
           (1)  Nonpayment of premium. …
21
           (2)  Discovery of fraud or misrepresentation by
22
                (a)  Any insured…in obtaining this insurance;
23
                (b)  You…in pursuing your claim under this
24  policy
25            (3)  A judgment by a court or administrative tribunal
       that you have violated a California or Federal law. …
26
              (4)  Discovery of willful or grossly negligent acts or
27  omissions, or of any violations of state laws or regulations

28
_____

[2] This statement of facts is based on the allegations in Plaintiff's Complaint. ECF No. 1.

2

establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5)  Failure by you or your representative to implement reasonable loss control requirements agreed to by you as a condition of policy issuance, or which were conditions precedent to a particular rate or rating plan, if that materially increases any of the risks insured against.

b.      We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2)  30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

Pl's Compl., ¶ 12.  In this way, the Policy tracks the statutorily permissible reasons for cancellation of a commercial policy under California Insurance Code § 676.2, and makes it clear that the required advance notice of cancellation must be mailed at least 30 days before the effective date of cancellation, and must further state the particular reason the policy is subject to cancellation.

On or about July 17, 2015, Bass ordered an inspection of the Sierra Nevada House in accordance with Plaintiff's right to obtain such inspection.  That inspection was performed by Insurance Research Services on August 11, 2015 and the resulting report concluded, among other things, that "no unusual hazards appear to be posed by operations, equipment, or materials."  Inspection, Ex. 2 to Pl.'s Compl., p. 8.  The inspection did, however, reveal the absence of "splash guards between the deep fryers and adjacent cooking units."  Id.  Lastly, the report noted that "[t]he information contained herein represents conditions and information available at the time of inspection, and the opinions of the on-site inspector, but [are] not based on any laws, codes or regulations." Id. at p. 7.

Following its receipt of the report, Plaintiff's underwriter, Bass, issued a letter on September 16, 2015 which referred to the inspection as a "loss control survey" and

3

1   contained a "Mandatory Recommendation" consisting of seven separate items for which

2   Defendant was asked to certify compliance.  Pl.'s Compl., Ex 3, p. 1.  The compliance

3   terms at issue included a recommendation that the fryers be "at least 18 [inches] or more

4   from the open flame cooking unit" with a directive that a metal baffle plate be used to

5   separate the two cooking areas.  The letter contained no reference whatsoever to

6   violations of any law or regulation.

7        On October 21, 2015, Plaintiff issued a Notice of Cancellation by mail, with an

8   effective date of November 23, 2015.  Pl.'s Compl., Ex. 4. The stated reason for the

9   cancellation was "[f]ailure to comply with recommendations."  No further explication was

10  included in the Notice, and again there was no indication that Defendant had violated

11  any law or regulation.  Plaintiff's underwriter, Bass, subsequently emailed the retail

12  broker, Deatsch, and indicated that if Defendant complied with the recommendations,

13  the Policy could be reinstated.  Deatsch forwarded Bass an email from Defendant

14  indicating that some of the recommendations had been completed, although apparently

15  not those pertaining to fryer spacing.  According to Plaintiff, Defendant never provided a

16  signed compliance form as to that particular recommendation.

17        On December 14, 2015, the Sierra Nevada House sustained fire damage.  The

18  fire started on the second floor after work hours.  Apparently not realizing that it

19  purportedly had cancelled Defendant's Policy, Plaintiff appointed an independent

20  adjustor to handle the claim.  On or about December 17, 2015, that adjuster, Engle

21  Martin & Associates, made a preliminary determination that the Sierra Nevada House

22  was a total loss.  Thereafter, Plaintiff issued a $100,000 advance payment of policy

23  proceeds towards Defendant's loss.  Once Plaintiff became aware of the cancellation, its

24  counsel demanded, by letter on March 23, 2016, that Defendant return its advance.  In

25  making that demand, Plaintiff indicated for the first time that Defendant's fryer

26  configuration violated California Mechanical Code Section 515.1.1.3, which requires that

27  "deep-fat fryers shall be installed with not less than a 16-inch (406 mm.) space between

28  the fryer and the surface flames from adjacent cooking equipment."  See Ex. 2 to Decl.

4

1  of Ivo Labar, ECF No. 5-2, p. 2.  The letter advised Defendant, also for the first time, that

2  Defendant's cancellation was in fact based on a violation of a "state law or regulation

3  establishing safety standards."  Id.

4       Plaintiff brought this suit against Defendant seeking declaratory relief that it had

5  effectively cancelled the Policy before the fire, and that its $100,000 advance was made

6  in error.

7       Pursuant to Federal Rule of Civil Procedure[3] 12(b)(6), Defendant now seeks

8  dismissal of (1) the declaratory relief claim set forth in Plaintiff's First Cause of Action,

9  and (2) the mistaken receipt/unjust enrichment claim made in Plaintiff's Second Cause of

10 Action.

11

12 **STANDARD**

13

14      On a motion to dismiss for failure to state a claim under Federal Rule of Civil

15 Procedure 12(b)(6), all allegations of material fact must be accepted as true and

16 construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

17 Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

18 statement of the claim showing that the pleader is entitled to relief" in order to "give the

19 defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

20 Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

21 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

22 detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

23 his entitlement to relief requires more than labels and conclusions, and a formulaic

24 recitation of the elements of a cause of action will not do."  Id. (internal citations and

25 quotations omitted).  A court is not required to accept as true a "legal conclusion

26 couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

27 Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

28 [3] All subsequent references to "Rule" are to the Federal Rules of Civil Procedure.

5

1  above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright &

2  Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) (stating that the

3  pleading must contain something more than "a statement of facts that merely creates a

4  suspicion [of] a legally cognizable right of action.")).

5         Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

6  assertion, of entitlement to relief." <u>Twombly</u>, 550 U.S. at 556 n.3 (internal citations and

7  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

8  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

9  the nature of the claim, but also 'grounds' on which the claim rests." <u>Id.</u> (citing 5 Charles

10  Alan Wright & Arthur R. Miller, <u>supra</u>, at § 1202).  A pleading must contain "only enough

11  facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  If the "plaintiffs . . .

12  have not nudged their claims across the line from conceivable to plausible, their

13  complaint must be dismissed." <u>Id.</u>  However, "[a] well-pleaded complaint may proceed

14  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

15  recovery is very remote and unlikely.'" <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S.

16  232, 236 (1974)).

17         A court granting a motion to dismiss a complaint must then decide whether to

18  grant leave to amend.  Leave to amend should be "freely given" where there is no

19  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

20  to the opposing party by virtue of allowance of the amendment, [or] futility of the

21  amendment . . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Capital, LLC v.

22  Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to

23  be considered when deciding whether to grant leave to amend).  Not all of these factors

24  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

25  carries the greatest weight." <u>Id.</u> (citing <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183,

26  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

27  "the complaint could not be saved by any amendment." <u>Intri-Plex Techs. v. Crest Grp.,

28  Inc.</u>, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing <u>In re Daou Sys., Inc.</u>, 411 F.3d 1006,

1    1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

2    1989) ("Leave need not be granted where the amendment of the complaint . . .

3    constitutes an exercise in futility . . . .")).

4

5                                        **ANALYSIS**

6

7           **A.    Policy Cancellation**

8           Defendant first seeks dismissal of Plaintiff's declaratory relief claim as set forth in

9    the First Cause of Action.  Defendant argues that Plaintiff is not entitled to a

10   determination that the Policy was no longer in effect because Plaintiff did not strictly

11   comply with the requirements governing cancellation of commercial policies. Defendant

12   points to California Code of Civil Procedure § 1013(a), which extends the service

13   requirement by five calendar days when mailing to a California address, and argues that

14   Plaintiff's cancellation did not fall within those time parameters.  Defendant also points to

15   terms contained within the Policy itself which constitute the only grounds upon which

16   cancellation can be predicated, and argues that Plaintiff's notice of cancellation did not

17   specify a permissible reason for cancellation.  The validity of both those arguments will

18   now be addressed.

19          **1.    Timeliness**

20          It is well established that "notices of cancellation must strictly comply with

21   statutory directives and the insurance policy's termination provisions."  Mackey v. Bristol

22   West. Ins. Services of Cal. Inc., 105 Cal. App. 4th 1247, 1258 (2003).  "In California,

23   there is no such thing as substantial compliance in furnishing notice that an insurance

24   policy has been cancelled."  Id.  The Policy specifies that, in the event the Plaintiff

25   decides to cancel for reasons other than non-payment of premium or fraud, it "will mail or

26   deliver advance written notice of cancellation, stating the reason of cancellation" to the

27   insured at the mailing address shown in the Policy "at least 30 days before the effective

28   date of cancellation."  Policy, ECF No. 1-1, at p. 16.  This mirrors the requirements of

1    California Insurance Code § 676.2(c)(1), which prohibits any change in commercial

2    policy coverage  "unless a written notice is mailed or delivered to the named insured and

3    the producer of record at the mailing address shown on the policy, at least 30 days prior

4    to the effective date of the…. change."   Those requirements specifically apply to

5    notices of cancellation.  Cal. Ins. Code §§ 676.2(b); 677.2(b).  Significantly, too, after a

6    commercial policy has been in effect for more than 60 days, § 676.2 states

7    unequivocally that "'[s]ubdivision (a) of Section 1013 of the [California] Code of Civil

8    Procedure is applicable if the cancellation notice is mailed."  Cal. Ins. Code

9    § 676.2(c)(1).  Section 1013(a) expressly provides that the right to act or make any

10   response to a notice served by mail "shall be extended five calendar days… if the place

11   of address and the place of mailing is within the State of California."  Therefore, although

12   the policy states only that it may be cancelled upon 30 days' notice, whether by mail or

13   other delivery, both the California Insurance Code and the California Code of Civil

14   Procedure indicate that an additional five days' notice must be provided if service is

15   effected by mail.

16        There is no dispute here that Plaintiff mailed its cancellation notice to Defendant,

17   and that the notice was mailed on October 21, 2015, 33 days before the November 23,

18   2015 date of cancellation.  See Pl.'s Compl., ECF No. 1, ¶ 16 and Ex. 4 thereto.

19   Consequently, it is undisputed that Plaintiff provided less than 35 days of notice if the

20   initial 30-day period is augmented by five days for service by mail.  Plaintiff nonetheless

21   argues that those provisions are not applicable to its Policy on grounds that commercial

22   insurance provided by surplus line non-admitted insurers are exempt from the mailing

23   requirements of the Code of Civil Procedure under California Insurance Code §

24   675.5(d)(7).  Plaintiff makes that contention despite the fact that its complaint makes no

25   reference to it being a surplus line non-admitted insurer or being "unauthorized" to do

26   business in California.  To the contrary, Plaintiff's Complaint states specifically that it "is

27   a surplus lines insurance carrier *authorized to do business in the State of California*."

28   Pl.'s Compl., ¶ 7 (emphasis added).

8

1    "'Nonadmitted insurance' means any property and casualty insurance permitted to

2    be placed directly or through a surplus line broker with a nonadmitted insurer eligible to

3    accept such insurance."  Cal. Ins. Code § 1760.1(m) (West 2016).  "'Nonadmitted

4    insurer' means an insurer not licensed or admitted to engage in the business of

5    insurance in this state . . . ."  Id. § 1760.1(n).  While Plaintiff's own complaint belies any

6    such non-admitted status, ultimately the distinction makes no difference in the Court's

7    analysis.  The California Supreme Court has held that where a statute covers the subject

8    matter of a provision in an insurance policy, the policy provision should be interpreted

9    consistently with California public policy as expressed by the statute.  Prudential-LMI

10   Com. Ins. v. Super. Ct., 51 Cal. 3d 674, 684 (1990) ("When a clause in an insurance

11   policy is authorized by statute, it is deemed consistent with public policy as established

12   by the Legislature.")  Here, because the policy itself, in accordance with the California

13   Insurance Code, provides for 30 days' notice of cancellation, and allows notice of

14   cancellation to occur by mail, the Insurance Code's additional directive that five

15   additional days be added for mailing under California Code of Civil Procedure § 1013

16   also applies.

17          In enacting Insurance Code §§ 676.2 and 677.2, the legislature clearly

18   contemplated that five additional days' notice be added for policies cancelled by mail.

19   Here, because the cancellation provisions of Plaintiff's policy were modelled after the

20   Insurance Code, the policy must be interpreted as requiring the five additional days'

21   notice called for by statute if cancellation is by mail.  Consequently, even if Plaintiff was

22   not required to adhere to the mailing requirements of the California Insurance Code as a

23   surplus line non-admitted insurer, as it alleges, by its own policy it in effect elected to do

24   so.

25          Plaintiff further argues that the mailing requirements of California Code of Civil

26   Procedure § 1013(a) still do not apply because "[n]otices called for by private contracts

27   such as insurance policies are not within the scope of Section 1013."  Alphonzo E. Bell

28   Corp. v. Listle, 55 Cal. App. 2d 300, 306 (1942)).  As Defendant points out, however,

1    Plaintiff's reliance on Alphonzo in this regard is misplaced.  Alphonzo in fact provides

2    that Section 1013 "would not apply to notices called for by private contracts *which fail to*

3    *provide for service by mail*."  Id. (emphasis added).  Here, the Policy provides for service

4    by mail, and Plaintiff indeed did mail its notice of cancellation.  Thus, the additional

5    mailing time requirement applies, and Plaintiff did not provide sufficient notice.

6                         **2.     Reasons for Cancellation**

7            Like timeliness, strict compliance is also required with regard to the permissible

8    reasons for which a commercial policy can be cancelled under California Insurance

9    Code § 676.2.  Kotlar v. Hartford Fire Ins. Co., 83 Cal. App. 4th 1116, 1120 (2000).

10   Under the statute, a carrier has a mandatory obligation to disclose those reasons in a

11   notice of cancellation.  Lee v. Indus. Indem. Co., 177 Cal. App. 3d 9021, 924 (1986).  As

12   indicated above, Plaintiff's Policy itself delineates the grounds for which cancellation can

13   occur, and these grounds are identical to those set forth in Section 676.2.  See Pl.'s

14   Compl., ECF No. 1, ¶ 12; Policy,  Ex. 1 at 15-16; see also Cal. Ins. Code § 676.2.  For

15   purposes of the present matter, those grounds fall under the following provisions:

16               (4)  Discovery of willful or grossly negligent acts or omissions,
                 or of any violations of state laws or regulations establishing
17               safety standards, by the named insured or his or her
                 representative which materially increase any of the risks
18               insured against.

19               (5) Failure by you or your representative to implement
                 reasonable loss control requirements, agreed to by you as a
20               condition of policy issuance, or which were conditions
                 precedent to our use of a particular rate or rating plan, if that
21               failure materially increases any of the risks insured against.[4]

22   Pl.'s Compl., ¶ 12.

23           Defendant contends that Plaintiff did not strictly comply with these requirements in

24   cancelling its Policy.  The cancellation notice itself states only that the Policy was being

25   cancelled for "[f]ailure to comply with recommendations."  ECF No. 1-4 at 2.  Now,

26   however, Plaintiff argues that Defendant violated state law because "the position of the

---

27           [4] Plaintiff refers to the fryer spacing recommendation as a "loss control measure."  ECF No. 1-3 at
28   2.  An argument for failure to implement reasonable loss control requirements is not plausible here
     because that recommendation was not a precondition to the issuance of the Policy.

1    deep fat fryer was closer to the open flame burners of the stove than permitted by the

2    California Mechanical Code [S]ection 515.1.1.3."  Pl.'s Opp., ECF No. 9, 7:16-18.

3    Plaintiff alleges that "there is no material distinction between the violation and the

4    recommendations because one of the recommendations was a request that

5    Thunderbutte correct the unsafe distance between the deep fat fryer and the open

6    flames of the stove, which was the same violation of the Mechanical Code that Bass had

7    discovered."  Id. at 8:9-13.  Nonetheless, it appears undisputed that Plaintiff did not

8    make any specific contention that Defendant violated the California Mechanical Code

9    until some three months after the fire, on March 23, 2016, when Plaintiff's counsel

10   suggested that the "recommendations" in fact amounted to a violation of Section

11   515.1.1.13.  See Ex. 2 to Decl. of Ivo Labar, ECF No. 5-2, p. 2.[5]

12        Here, because Plaintiff did not reference a violation of Mechanical Code

13   Section 515.1.1.3 as its reason for cancellation, and only did so indirectly months after

14   the Policy was purportedly cancelled, Plaintiff did not strictly comply with the terms of

15   both the Policy and the California Insurance Code, which required Plaintiff to specify an

16   authorized reason for cancelling any policy issued for more than 60 days.  Though

17   Plaintiff later identified "violations of state laws or regulations the fact remains that

18   Plaintiff's cancellation notice did not specify that authorized ground as its reason for

19   cancelling Defendant's policy, and, instead referring only to "failure to follow

20   recommendations."  "Failure to follow recommendations," in and of itself, however, is not

21   a valid reason for cancelling an existing commercial policy under California Insurance

22   Code § 677.2.  Clarendon Nat'l. Ins. Co. v. Ins. Co. of the West, 442 F. Supp. 2d 914,

23   938 (E.D. Cal. 2006).  Plaintiff, accordingly, did not comply with the requirements for

24   cancelling Defendant's Policy.[6]

25   _____

26        [5] Nor would Defendant have necessarily inferred any violation of the Mechanical Code from
     Plaintiff's Mandatory Recommendation, since the spacing requirements of the Mechanical Code, at 16
27   inches, are different from the recommendation made in the Inspection report that fryers be at least 18
     inches from an open flame cooking unit.

28        [6] Even if Plaintiff identified a violation of law in the cancellation notice, which it did not, Plaintiff

1  Plaintiff's declaratory relief claim as set forth in the First Cause of Action is

2  therefore DISMISSED.  Because the Court concludes that Plaintiff cannot amend its

3  complaint to state a viable claim for declaratory relief under the circumstances of this

4  case, no leave to amend will be permitted.

5  **B.   Mistake/Unjust Enrichment**

6  Defendant also seeks dismissal of Plaintiff's Second Cause of Action, which

7  alleges unjust enrichment on Defendant's part for retaining Plaintiff's erroneously issued

8  advance payment.  Defendant argues that Plaintiff cannot claim a mistake when its

9  underwriter, Bass, knew the Policy was cancelled.  Plaintiff claims that it had no

10  knowledge that the Policy had been cancelled.

11  There is little uniformity among courts with respect to the requirements for

12  pleading mistake.  One court has adopted a strict view that requires a party to allege

13  facts showing: (1) how the mistake was made; (2) whose mistake it was; and (3) what

14  brought about the mistake.  Auerback v. Healy, 174 Cal. 60, 62 (1916).  Other courts

15  have allowed mistake to be pleaded inferentially.  Robertson v. Melville, 60 Cal. App.

16  354 (1923).

17  Here, however, the subtleties of that distinction do not affect that viability of

18  Plaintiff's mistake claim.  Plaintiff has already pleaded that Bass was "authorized to

19  underwrite and issue policies of insurance on behalf of General Star" (Pl.'s Compl., ¶ 8),

20  making Bass an agent of General Star.  Additionally, Plaintiff acknowledged that Bass

21  knew the Policy had been cancelled; indeed, it generated the notice of cancellation.  Id.

22  at ¶ 16.  It is well-settled law in California that "notice to an agent is notice to the principal

23  . . . ."  Early v. Owens, 109 Cal. App. 489, 495 (1930).  Thus, Plaintiff cannot plead a

24  mistake when Bass had notice of the Policy's cancellation, even if Plaintiff itself did not

25  have direct knowledge of the fact.  Accordingly, Plaintiff's mistake claim is DISMISSED.

26  Because Plaintiff is unable to cure the defect as a matter of law, the dismissal is with

27

28  would still have to establish that the violation "materially increased its risk."  As indicated above, the loss
control survey report did not identify any such risk in its assessment.  See ECF No. 1-2.

12

1  prejudice.[7]

2                                 **CONCLUSION**

3

4        Defendant's Motion to Dismiss, ECF No. 5, for failure to state a claim is

5  GRANTED as follows:

6        1.     The Motion is GRANTED as to Plaintiff's declaratory relief claim set forth in

7               Plaintiff's First Cause of Action.  The First Cause of Action is therefore

8               DISMISSED with prejudice.

9        2.     The Motion is additionally GRANTED as to Plaintiff's mistake/unjust

10              enrichment claim contained in Plaintiff's Second Cause of Action.  That

11              claim is also DISMISSED with prejudice.

12       3.     The matter having now been concluded in its entirety, the Clerk of Court is

13              directed to enter judgment against Plaintiff and close the file.

14       IT IS SO ORDERED.

15  Dated:  November 16, 2016

16

17                                         MORRISON C. ENGLAND, JR.
                                           UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27  _____

28       [7] Both sides have requested that the Court judicially notice various documents in accordance with
    Federal Rule of Evidence 201.  Both those requests are unopposed and are GRANTED.

                                         13